UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| KRISTA E. WISE, | : CIVIL ACTION NO. |
| | : 3:09CV00086(CSH) |
| Plaintiff, | : |
| | : |
| V. | : |
| | : |
| CAVALRY PORTFOLIO SERVICES, LLC, | : |
| | : |
| Defendant. | : SEPTEMBER 28, 2009 |

## MEMORANDUM OF LAW IN OPPOSITION TO
## PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Defendant, Cavalry Portfolio Services, LLC, hereby submits its Memorandum of Law in Opposition to Plaintiff's Motion for Class Certification. For the following reasons, including Plaintiff's failure to succinctly define the classes and the problems that flow therefrom, the absence of any discussion concerning counsel's or Plaintiff's financial ability to fund the proposed class action, and the lack of a demonstrated superiority of a class action over individual actions, the motion should be denied.

### NATURE OF THE PROCEEDINGS

Plaintiff's Amended Complaint[1] contains claims based on the FDCPA and CUTPA, which are both predicated on collection letters sent by Defendant to Plaintiff. Plaintiff has not contended that the amount stated on the letter is wrong or that Defendant misrepresented the amount of the debt as of the date of the letter. Plaintiff nonetheless claims that there is an additional disclosure requirement under the FDCPA

---

[1] Plaintiff initially filed a Complaint against Defendant in which she asserted claims predicated on the Fair Debt Collection Practices Act ("FDCPA"), the Creditors' Collection Practices Act ("CCPA"), and the Connecticut Unfair Trade Practices Act ("CUTPA"). Shortly after Defendant filed its motion to dismiss the two state law claims based on the CCPA and CUTPA (DKT #15), Plaintiff filed an Amended Complaint (DKT #16) that removed the CCPA claim and added certain allegations with respect to the CUTPA claim. Defendant then renewed its Motion to Dismiss the CUTPA claim (DKT #19), which is currently pending before the Court.

concerning interest. (See Amend.Compl. ¶¶17-8.) This alleged disclosure requirement is, however, found nowhere in the text of the FDCPA.

The single legal claim in this action is that Defendant failed to disclose to Plaintiff the truism that her credit card account was accruing interest. It appears that this alleged federal claim also provides the exclusive basis for the claim under CUTPA. Defendant has filed a motion to dismiss the CUTPA count, which is currently pending before the Court[2].

Presently before the Court is Plaintiff's Motion for Class Certification.

## ARGUMENT

### I.     CLASS ACTIONS AND THE FDCPA

Under the standard announced by the United States Supreme Court and applied in this Circuit, a class "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied," General Tel. Co. v. Falcon, 457 U. S. 147, 161 (1982); Gary Plastic Packaging Co. v. Merrill Lynch, 903 F.2d 176, 180 (2d Cir.), cert. denied, 498 U. S. 1025 (1991). Rule 23(a) provides that

> [o]ne or more members of a class may sue or be sued as representative parties on behalf of all members only if:
> (1) the class is so numerous that joinder of all members is impracticable,
> (2) there are questions of law or fact common to the class,
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

---

[2] Defendant notes that Plaintiff's motion for certification insofar as it relates to the CUTPA claim would become moot if the Court grants Defendant's pending Motion to Dismiss (DKT #19). Accordingly, Defendant respectfully requests that the Court first rule on the Motion to Dismiss.

The party seeking class certification bears the "heavy burden" of establishing that each of these prerequisites has been met. McKernan v. United Technologies Corp., 120 F. R. D. 452, 453 (D. Conn. 1988). "Failure to comply with even one of the requirements of Rule 23(a) is fatal to a motion for class certification." In re Colonial Partnership Litigation, 1993 WL 306526, *13 (D. Conn. 1993); see also Retired Chicago Police Assoc. v. City of Chicago, 7 F.3d 584, 596 (7th Cir. 1993).

In addition, when plaintiffs seek to maintain a class action under Federal Rule 23(b)(3), they must also show that common questions predominate over any questions affecting only individual members and that a class action is superior to other available methods for fair and efficient adjudication of the controversy. Clement v. American Honda Finance Corp., 176 F. R. D. 15 (D. Conn. 1997). The matters pertinent to the superiority finding include: "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions . . . . and (D) the difficulties likely to be encountered in the management of a class action." Fed. R. Civ. P. 23(b)(3)(A-D).

Generally speaking, in the absence of some statutory limitation, the damages available to individual class members in a class action and an individual action would be the same. For purposes of the superiority analysis called for by Rule 23, generally there would be no disadvantage to a class action in terms of damages. The FDCPA, however, limits the damages available in class actions, to "such amount as the court may allow . . . not to exceed the lesser of $500,000 or one per centum of the net worth of the debt collector." 15 U.S.C. §1692k(a)(2)(B). This provision places a limitation on the utility, and hence superiority, of an FDCPA class action when compared to an

3

individual action, except in certain instances.   See, e.g., Jones v. CBE Group, Inc., 215 F.R.D. 558 (D. Minn. 2003).

The statutory damage limitation in FDCPA class actions is not designed to encourage or authorize class actions, or to express a Congressional preference for class actions under the FDCPA. Instead, it creates a legislative limitation on the utility of the class action device which narrows the circumstances in which the class action should be the procedural mechanism of choice. Defendant submits that there may be circumstances where the particular combination of the statutory damages limit, the net worth of the defendant and the number of putative class members would yield a result where the statutory damages for each class member would compare reasonably with those available in an individual action and, assuming other elements of Rule 23 have been satisfied, the action may be appropriate for class treatment. Where, even using the maximum statutory damage cap of $500,000, the proposed class may be able to generate only nominal awards to individual class members, the class action has a virtually nonexistent benefit to the class members. Such a disparity necessarily enhances individual class members' interest in pursuing their own claims and reduces or eliminates, as the case may be, the superiority or necessity of a class action. Id., see also Bryant v. Bonded Account Service/Check Recovery, Inc., 208 F.R.D. 251 (D. Minn. 2000); Lyles v. Rosenfeld Attorney Network, 2000 WL 798 824 (N.D. Miss. 2000).

Just as it is possible for Plaintiff to cite cases under the FDCPA in which classes have been certified, so, too, is it possible to call attention to numerous cases in which certification was denied or revoked. E.g., Savino v. Computer Credit, Inc., 173 F.R.D. 346 (E.D.N.Y. 1997); Villari v. Performance Capital Management, Inc., 1998 U.S. Dist.

4

Lexis 11128 (S.D.N.Y.); Goldberg v. Winston & Marrone, 1997 U.S. Dist. Lexis 3521 (S.D.N.Y.); Hall v. National Recovery Systems, Inc., 1996 WL 467512 (M.D. Fla. 1996); Neves v. Nationwide Credit, Inc., No. 1:95-CV-1532 (N.D. Ga. 1996); Kohlenbrenner v. Dickinson, 1996 WL 131736 (N.D. Ill. 1996); Wein v. The Master Collectors, 1995 WL 550475 (N.D. Ga. 1995); Sandlin v. Shapiro & Fishman, 1996 WL 563349 (M.D. Fla. 1996); Dalton v. FMA Enterprises, Inc., 1996 WL 379105 (M.D. Fla. 1996); Clement, 176 F.R.D. at 22.

## II. PLAINTIFF FAILS TO MEET THE HEAVY BURDEN OF DEMONSTRATING COMPLIANCE WITH ALL REQUIRED ELEMENTS UNDER FEDERAL RULE 23(a)

### A. The Plaintiff's Class Definitions Are Flawed

In order to state a class action claim, Plaintiff must allege a reasonably defined class of similarly situated plaintiffs. Adashunas v. Negley, 626 F. 2d 600 (7th Cir. 1980). The class definition should allow membership in the class to be readily determined. The definition should avoid the necessity of individual factual determination or entanglement in the ultimate legal issue in the case. See, e.g., Driver v. Helms, 74 F.R.D. 382, 402 (D.R.I. 1972) (class definition presumed unlawful conduct).

Plaintiff's proposed class definitions are wrought with problems that preclude certification. (See Am. Compl. ¶23.) The proposed definition is vague and does not enable Defendant to determine who is and who is not a member of the proposed class. As such, Plaintiff should not be permitted to obtain class certification due to deficient class definitions.

First, the proposed class definition refers to "[a]ll persons in the State of Connecticut to whom . . . Defendant sent one or more Letters . . . ." (Am. Compl. ¶

5

23(A-B).) It is unclear whether this refers to people who are presently in the State of Connecticut and who received a letter, regardless of their location at the time of receipt of the letter(s) or whether it merely refers to people who were located in the State of Connecticut at the time of receipt of the letter(s) but who may presently reside elsewhere. Without resolution of this ambiguity, the Court could not begin to assess the size of the proposed class. Moreover, depending on the interpretation, it may be impossible to ascertain class membership. Defendant would not be able to determine who received a certain letter while residing anywhere in the United States and is now living in the State of Connecticut.

Second, Plaintiff purports to include persons who received one or more letters "substantially in the form of one of the Letters." (Am. Compl. ¶ 23(A-B).) This reference is problematic because it could encompass letters that are "substantially in the form of one of the Letters" but are not similar in all material respects, especially those aspects of the letters concerning the balance due. Such other letters would likely fail to form the basis of the class claims as alleged in this case. As such, this reference is vastly overinclusive.

Third, Plaintiff refers to collection of a "non-business debt." (Am. Compl. ¶ 23(A-B).) This language fails to track the language of the FDCPA, which applies only to consumer debts. Because the FDCPA does not apply to the collection of all "non-business" debts, for example, the collection of certain fines and penalties, the use of "non-business" is overbroad and inappropriate. Accordingly, the Court should only permit consideration of attempts to collect consumer debts.

The additional problem is that it is impossible to determine whether the debts in question were for "personal, family, or household purposes" from a review of Defendant's files. If the subject debt had been incurred for business purposes, the FDCPA would not apply at all. See 15 U.S.C. § 1692(a)(5). Accordingly, class members could not readily be identified without an individualized consideration of facts relating to the particular plaintiff. Plaintiff has failed to take this problem into account.

### B.  Plaintiff Has Failed To Establish Numerosity

Federal Rule of Civil Procedure 23(a) sets forth the requirements for class certification: "One or members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable . . . ." Fed. R. Civ. P. 23(a)(1).

In order to satisfy this element of Federal Rule 23, the plaintiff has the burden of demonstrating the numbers of prospective plaintiffs in the putative class. Deflumer v. Overton, 176 F.R.D. 55, 58 (N.D.N.Y. 1997). Although an absolutely precise number is not necessarily required as a prerequisite for class certification, there must be a reasonable basis for an inference that the class, as defined by the plaintiffs, is sufficiently numerous that joinder is impracticable. Id. The evidence presented must be more than the conclusory assertion of counsel, which assertions are wholly insufficient to meet the requirements of Rule 23(a)(1).

Regardless of the deficiencies in the class definition, Plaintiff has not made any effort to supply the Court with even a rough estimate of the size of the proposed class. Instead, Plaintiff simply mentions that the Court can assume that there are 40 or more people in the putative class. (Pl. Br. at 6.) Aside from this assumption, Plaintiff has no

7

idea how many people are in the putative class. Although Plaintiff inquired about the size of the putative class in discovery, Defendant was unable to determine the size due to the ambiguities and definitional problems discussed above and therefore objected.

As a result, Plaintiff has failed to present a record sufficient to establish numerosity. She should not be permitted to argue essentially that the putative class is "large enough" and only later seek to gain even a rough understanding as to its actual size while disregarding whether there is any ability to identify class members at all. The Court should not tolerate such a cavalier attitude toward the class certification requirements. Therefore, Plaintiff has failed to meet her burden as to numerosity.

### C.  The Record is Insufficient to Establish Commonality and Typicality

Plaintiff's argument about typicality and/or commonality is also lacking. In her proposed class definition, Plaintiff refers to "persons . . . to whom . . . Defendant sent one or more Letters . . . ." (Am. Compl. ¶ 23(A).) Because it is unclear whether Plaintiff's claims are predicated on the receipt of merely one letter or require two letters, or whether there is a violation connected with sending only the first such letter or only the second, it is unclear whether the claims of those who have received "more" letters are common or typical of the class. Plaintiff's submission does little more than assert the conclusion, without analysis, that the claims meet the standards of commonality and typicality.

### D.  Plaintiff Has Not Met Her Burden Of Establishing Her Own Adequacy Or That Of Class Counsel

The focus of Federal Rule 23(a)(4) is (i) the adequacy of counsel retained to represent the class and (ii) the ability of the named plaintiff to fairly and adequately protect the interests of the class.

### (1) Class Counsel

To satisfy the Rule 23(a)(4) adequacy of representation requirement, Plaintiff must demonstrate that she has retained adequate class counsel. Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 562 (2d Cir. 1968) vacated on other grounds, 417 U.S. 156 (1974). A Court must scrutinize whether Plaintiff's counsel is qualified, experienced and generally able to conduct the litigation. Id.

To this end, the court should inquire as to the counsel's ability to fund the costs of litigation, if the representative Plaintiff is relying on them to do so. See Wilner v. OSI Collection Services, Inc., 201 F.R.D. 321, 326 (S.D.N.Y. 2001) ("[b]efore certifying a class, courts often examine whether the litigation can be funded during the pendency of the case"). Indeed, "it has been squarely held that when parties seek to maintain a class action but cannot assume the cost of providing the notice required by due process, the action cannot be maintained." Buford v. American Fin. Co., 333 F. Supp. 1243, 1250 (N.D. Ga. 1971) (citing Givens v. W. T. Grant Co., Civil Action No. 14296 (D. Conn. June 15, 1971); see also Fulk v. Bagley, 88 F.R.D. 153 (M.D.N.C. 1980) (class certification denied when plaintiffs' willingness and ability to finance class suit could not be determined); Dirks v. Clayton Brokerage Co. of St. Louis Inc., 105 F.R.D. 125 (D. Minn. 1985) (court considered plaintiff's ability to assume litigation costs such as notice when the potential class numbers were in the tens of thousands).

Plaintiff's brief is completely devoid of any discussion concerning the financing of this proposed class action. Attorneys Blinn and Faulkner have not disclosed whether they or their client is responsible initially for bearing the costs of this action, have not disclosed any estimate of such costs or an ability to bear such cost. Plaintiff and her

9

counsel simply have not met their burden of demonstrating that the action will be adequately funded. As a result, Plaintiff has failed to establish that she has retained adequate counsel.

### (2) The Plaintiff Has Not Been Shown To Be An Adequate Representative

The plaintiff has made no showing whatsoever as to the Plaintiff's familiarity with the action, her participation in decision-making in the case, her ability or willingness to bear the costs of the action or her understanding of the comparative merits of class and individual actions. See Kirkpatrick v. J.C. Bradford & Co., 827 F.2d 718, 728 (11th Cir. 1987) cert. denied 485 U.S. 959 (1988) (class must not be certified if plaintiff has abdicated conduct of case to attorneys). Instead, Plaintiff has merely submitted a generic and conclusory affidavit in support of class certification. This affidavit does not contain any meaningful statements that would support a finding by this Court that Plaintiff is an adequate representative.

## III. EVEN ASSUMING THAT THE PLAINTIFF HAS MET HER BURDEN OF PROOF UNDER RULE 23(a), CERTIFICATION SHOULD BE DENIED BECAUSE THE PLAINTIFF HAS NOT MADE ANY SHOWING TO SATISFY RULE 23(b)

Even if Plaintiff were able to prove that all the elements under Rule 23(a) had been satisfied, Plaintiff's motion should be denied because she has made virtually no showing to meet her burden of proving satisfaction of the elements of Rule 23(b) - in particular, whether a class action is superior to other available methods to resolve the current controversy and whether common issues predominate. This element is governed by Rule 23(b)(3), the provision under which the Plaintiff seeks to proceed

here. This subdivision authorizes a class action where the prerequisites of Rule 23(a) have been satisfied and where:

> (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of class action.

Fed. R. Civ. P. 23 (b)(3).

### A.   Common Questions Do Not Predominate

Rule 23(b)(3) requires that the court find the "questions of law or fact common to the members of the class predominate over questions affecting only individual members." Although the alleged common question involves an alleged violation of the FDCPA, any determination of liability or class membership will turn on facts and circumstances applicable to each class member.

Plaintiff is seemingly blind to the threshold individualized issue in this case. As discussed above, resolution of the proposed class action will require an individualized inquiry into each and every class member's debt to determine whether the debt is a consumer debt, in which case the FDCPA would apply. While such an inquiry sounds simple, it is actually very difficult because the nature of an underlying debt cannot be determined ministerially from any readily available set of records. Whether the debt sought to be collected is a "consumer" debt can only be determined through an individualized examination relating to the facts concerning each proposed plaintiff.

11

The existence of such an individualized issue weighs against a finding that common questions predominate under Federal Rule 23(b)(3).  See, e.g., Kelley v. Galveston Autoplex, 196 F.R.D. 471 (S.D. Tex. 2000) (individual questions precluded finding of predominance); In re Ford Motor Co. Ignition Switch Products Liability Litigation, 194 F.R.D. 484 (D.N.J. 2000) (differences in available defenses and individual damage calculations weighed against finding of predominance); Forman v. Data Transfer, Inc., 164 F.R.D. 400 (E.D Pa. 1995) (individualized inquiries in an action under Telephone Consumer Protection Act resulted in no common nucleus of operative fact); Jefferson v. Security Pacific Financial Services, 162 F.R.D. 123 (N.D. Ill. 1995) (plaintiff could not show that common questions predominated in TILA action).

### B. Plaintiff Has Not Analyzed The Superiority Of The Class Action Device In This Case

Rule 23(b)(3), sub-sections (A) through (D), expressly instructs the Court to analyze a wide variety of factors in determining whether a class action is "superior" to other methods for adjudicating the controversy.  Section (A) of Rule 23(b)(3) states that one relevant factor in determining whether a class should be certified is "the interest of members of the class in individually controlling the prosecution or defense of separate actions." Each class member of Plaintiff's proposed class potentially has a higher interest in controlling his or her own case because of the class action limit on statutory damages.

Under the FDCPA, the maximum statutory damages in a class action are the lesser of $500.00 or 1% of the net worth of the defendant, "without regard to the minimum individual recovery." 15 U.S.C. §1692k(a)(2)(B).  In the absence of sufficient information about the number of class members on the current record, it is impossible to

12

compare the potential recoveries from class members in the proposed class action with those available in an individual action. Depending on the net worth of the agency and the number of putative class members, the potential statutory damages to each class member might only be nominal, conferring virtually no benefit on individual class members. Under such circumstances, the primary benefit to be provided by the action is in the form of compensation to class counsel. If the only benefit to class certification is the generation of additional attorney's fees, class status should not be granted for that purpose.

By comparison, if individual plaintiffs controlled their own cases, they each would be eligible, if successful, to recover greater statutory damages of up to $1,000, depending upon the individual circumstances of his or her own case. 15 U.S.C. § 1692k(2)(a). In addition, each individual plaintiff might have different claims for actual damages that could be pursued in a manner most appropriate to the individualized circumstances. 15 U.S.C. § 1692k(a)(1). These individual plaintiffs would not be deterred by litigation costs because the FDCPA provides for recovery of expenses of suit, including attorneys' fees. 15 U.S.C. § 1692k(a)(3). This provision removes any disincentive, and in fact increases the incentive for individuals to pursue their own claims and control their own cases. Historically, the numerous individual FDCPA cases filed in this District, by Plaintiff's lawyers and others, reflect no difficulty for individuals to find counsel to take and pursue individual cases.

The above reasoning has resulted in the denial of class certification in other FDCPA cases. For example, in Lyles v. Rosenfeld Attorney Network, 2000 WL 798824 (N.D. Miss. 2000), the court found that class members could potentially recover only

13

$18.68 if the class were certified and $1,298.78 if it were not. The court determined that the class action was not the superior method for adjudication of the controversy. See also Leyse v. Corporate Collection Services, Inc., 2006 WL 2708451 (S.D.N.Y. Sept. 18, 2006) (holding, as an alternative basis for denying class certification, that Plaintiff had not satisfied the superiority requirement given that "each putative class member could receive only up to $140, an amount significantly lower than what they could recover were they to bring suit individually"). Shelley v. AmSouth Bank, 2000 WL 1121778 (S.D.A. 2000) (comparing potential recovery of $1 for class members with potential individual recovery of $100-$1,000); Jones v CBE Group, Inc., 215 F.R.D. 558 (D.Minn. 2003) (class action not superior because of limited individual class member recovery).

In this Circuit, the District of Connecticut found that a proposed consumer class action failed to meet the superiority test of Rule 23(b)(3) because of, inter alia, the de minimis recovery of the numerous class members. Clement, 176 F. R. D. at 23. In that case, the court stated the following:

> Lastly, the superiority requirement of Rule 23(b)(3) has not been met here because a class action is not "superior to other available methods for fair and efficient adjudication of [this] controversy." Fed. R. Civ. P. 23(b)(3). The parties' main argument in support of the settlement, i.e. that it is just when compared to the CLA's $500,000 damages cap, actually supports a finding that a class action is not the superior method for adjudicating the controversy. Since 650,000 notices were sent out and only 1000 opt-outs were received, if this class action suit went to trial and resulted in the maximum $500,000 cash award available under the CLA, each class member would be entitled to less than one dollar of the total settlement. See 15 U.S.C. §1640(a)(2)(B) limiting the award in a class action under the CLA to "the lesser of $500,000 or 1 per centum of the net worth of the creditor". Each class member would unquestionably fare better by bringing an individual action alleging CLA and unfair trade practices claims.

14

Id.

In the instant case, Plaintiff has not even presented an analysis of such considerations. Instead, she advances her argument in favor of superiority with little more than unsupported legal conclusions and baseless assumptions about class members, the alleged unavailability of counsel to bring individual claims, and the alleged lack of awareness[3] of putative class members of a claim that they did not receive a notice in their collection letters informing them that their credit card debts were accruing interest. In actuality, in individual FDCPA actions, with the potential recovery of statutory and actual damages, as well as costs and attorney's fees "there is no lack of incentive for either plaintiffs or counsel to pursue individual FDCPA actions." Jones, 215 F.R.D. at 570.

Plaintiff's counsel's arguments have little to do with this particular case. Instead, the plaintiff's arguments are generic. Superiority under Federal Rule 23(b)(3) is not a conclusion that can be based on the mere argument of counsel without any analysis of the circumstances of the case. A "class action cannot simply be a marginally acceptable device or one merely comparable to other methods of conflict resolution, it must affirmatively be preferable in a legally significant sense. A class action that requires each member to surrender essentially all of her damages cannot easily be characterized as a superior vehicle for the fair adjudication of a controversy". Lyles, 2000 WL 798824 at *6.

---

[3] The assertion that certain putative class members are not aware of this claim does not support class certification. "[T]he plain truth is that in many cases Rule 23(b)(3) is being used as a device for the solicitation of litigation [and] [t]his is clearly an 'undesirable result' which cannot be tolerated." Buford, 333 F. Supp. at 1251.

15

Accordingly, on the current record, there is no basis on which to conclude that a class action is superior in this case. Plaintiff's memorandum is devoid of any meaningful analysis of the superiority issue. Plaintiff gives no consideration to a possible comparison of the remedies available to a class member in an individual action to the considerably lesser benefit that may be available to class members based on the damage limitations under the FDCPA. For all Plaintiff's counsel knows, the individual recovery of class members could be less than the cost of the postage stamp necessary to provide notice to them. Rather than recognize that such limited recoveries may give class members a much greater interest in controlling their own claims, the plaintiff falsely argues that "the cost of pursuing individual litigation to seek recovery against a well-financed adversary is not feasible," (Pl. Br. at 11). A review of the docket in this District illustrates the feasibility of bringing individual FDCPA suits and counsel's apparent interest in providing assistance with such claims.

In addition, the certification of a class is not necessary to the maintenance of this action. While "necessity" is not an explicit requirement to maintain a class action, it is read into Rule 23 in the Second Circuit. Galvan v. Levine, 490 F.2d 1255, 1261 (2d Cir. 1973), cert. denied, 417 U.S. 936 (1974); Ruiz v. Blum, 549 F. Supp. 871, 878 (S.D.N.Y. 1982); Bridgeport Guardians, Inc. v. Members of Bridgeport Civil Serv. Comm'n, 354 F. Supp. 778 (D. Conn. 1973), aff'd in part and rev'd in part, 482 F. 2d 1333 (2d Cir. 1973), cert. denied, 421 U.S. 991 (1975). Necessity is a requirement to maintain a class action under each of the Rule 23(b) numbered options, including in deciding whether a class action is "appropriate" pursuant to Rule 23(b)(1) and "superior" pursuant to Rule 23(b)(3). See Davis v. Smith, 607 F.2d 535, 540 (2d. Cir. 1978).

The Plaintiff has not demonstrated a "need" for class certification. There is no reason why Plaintiff could not continue this suit absent class certification. See Windam v American Brands, Inc., 565 F.2d 59, 69 (4th Cir. 1977), cert. denied, 435 U.S. 968 (1978); Stoudt v. E. F. Hutton & Co., Inc., 121 F.R.D. 36, 38 (S.D.N.Y.1988). There is no evidence of the inability of Plaintiff to pursue this action independently since a debt collector who fails to comply with the FDCPA's provisions must pay to the plaintiff the costs of plaintiff's action, as well as a reasonable attorney's fee. 15 U.S.C. 1692k(a)(3). This assurance of reimbursement upon success provides the plaintiff with ample incentive to continue the suit.

As always, this Court should be mindful of the potential abuses of the class action device, especially under the FDCPA. For example, "the minimal recovery available to each plaintiff [in a class action] under the FDCPA creates legitimate concern regarding client control of the litigation." In re WorldCom, Inc. Securities Litigation, 219 F.R.D. 267, 285-86 (S.D.N.Y. 2003). Moreover, the Seventh Circuit has expressed the following concerns:

> [T]he driving force behind these cases is the class action attorneys. They have a strong incentive to litigate these cases – oftentimes despite their marginal impact – in the form of attorneys' fees and costs they hope to recover . . . Not surprisingly, then, "FDCPA litigation is a breeding ground for class actions." Lawrence Young & Jeffrey Coulter, Class Action Strategies in FDCPA Litigation, 52 Consumer Fin. L.Q. Rep. 61, 70 (1998). It is these attorneys' fees which are a significant inducement for FDCPA class action lawsuits. 109 F.3d at 344; see Goldberger v. Integrated Solutions, Inc., No. 99-7198, 2000 WL 320447, at 10 (2d Cir. Mar. 28, 2000) (in many class action cases the plaintiffs "are mere 'figureheads' and the reason for bringing such actions is 'the quest for attorney's fees.' "). Unfortunately, as Judge Winter of the Second Circuit has noted, these attorney fees strongly encourage class actions, many of which are frivolous. See Ralph K. Winter, Paying Lawyers Empowering Prosecutors, and Protecting Managers: Raising the Cost of Capital in America, 42 Duke L. J. 945, 949 (1993). The history of the FDCPA

17

> litigation shows that most cases have resulted in limited recoveries for plaintiffs and hefty fees for their attorneys. Consider the recent case of Crawford v. Equifax Payment Servs., Inc., where a negotiated settlement provided $2,000 to the class representative, $78,000 to the plaintiff's attorneys, and nothing for the rest of the class. 201 F.3d 877, 880 (7th Cir. 2000) (reversing the approval of the settlement). The impetus of that suit clearly was not the plaintiffs' share of the award. See Winter, supra, at 949 (in derivative class action settlements, plaintiffs recover only 50% of the time while their attorneys receive fees in 90% of the cases). Crawford and similar cases illustrate "the all-too-common abuse of the class action as a device for forcing the settlement of meritless claims and is thus a mirror image of the abusive tactics of debt collectors at which the statute is aimed." White v. Goodman, 200 F.3d 1016, 1019 (7th Cir. 2000).

Sanders v. Jackson, 209 F.3d 1998 (7th Cir. 2000).

## CONCLUSION

For the foregoing reasons, based upon the instant motion and sparse and inadequate record submitted, Plaintiff has failed to fulfill the requirements of Federal Rule 23 for certification of a class. Plaintiff's showing as to numerosity or the impracticality of joinder is speculative at best and ignores the individualized differences between putative class members, the existence of which precludes a finding of commonality and typicality under Rule 23. The adequacy of class counsel is not fully supported by the record, and no affirmative showing has been made as to the adequacy of the representative Plaintiff. Lastly, Plaintiff's motion fails to provide any meaningful supporting analysis of the proposed class action's superiority, ignoring a most important feature of Rule 23, a comparison of the prospective class recovery and the potential individual recovery in an individual action.

For the foregoing reasons, Defendant respectfully requests that this Court deny Plaintiff's Motion for Class Certification.

Respectfully submitted,

THE DEFENDANT
CAVALRY PORTFOLIO SERVICES, LLC

By: _____
Jonathan D. Elliot   (ct05762)
Zeldes, Needle & Cooper, P.C.
1000 Lafayette Boulevard
Bridgeport, CT  06604
Tel:    203-333-9441
Fax:   203-333-1489
E-Mail:  jelliot@znclaw.com

Its Attorneys

## CERTIFICATION

I hereby certify that on September 28, 2009, a copy of the foregoing **Memorandum of Law** was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

Jonathan D. Elliot