UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| KRISTA E. WISE,<br><br>        Plaintiff,<br>  v.<br><br>CAVALRY PORTFOLIO SERVICES, LLC,<br><br>        Defendant. | 3:09-cv-86 (CSH) |

**RULING ON MOTION TO DISMISS**

HAIGHT, Senior District Judge:

Plaintiff Krista Wise brings this action individually and as a putative class action[1], alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. ("FDCPA") (Count One) and the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110 ("CUTPA") (Count Two).  Plaintiff alleges that Defendant Cavalry Portfolio Services, LLC, a debt collector, sent her two collection letters which violated the statutes.  Defendant has moved pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the CUTPA claim (Count Two) for failure to state a claim upon which relief can be granted, arguing that Plaintiff has failed to adequately allege an ascertainable loss of money or property, as required by CUTPA.  Defendant has not moved for dismissal of the FDCPA claim (Count One).  For the reasons stated herein, Defendant's Motion to Dismiss Count Two [Doc. 19] is DENIED.

**I.    FACTS**

Cavalry SPV I, LLC ("SPV") purchased Plaintiff's defaulted Citibank account in March 2008.  Thereafter, Defendant Cavalry Portfolio Services, LLC engaged in collection efforts on

---

[1] Plaintiff has filed a Motion for Class Certification [Doc. 26], which has not yet been ruled upon. Nothing in this ruling should be taken to decide or express any view on that pending motion.

behalf of SPV.  On March 11, 2008, Defendant sent Plaintiff a collection letter, which listed a balance of $7,178.43.  On November 12, 2008, Defendant sent Plaintiff a second collection letter, which listed the balance due as $7,988.99.  "None of the letters stated that the amount of the debt might vary from day to day because of, for example, interest, late charges, or other charges." (Am. Compl. ¶ 17)  "None of the letters notified Plaintiff of her right to obtain an exact, up-to-date amount of the debt allegedly due." (Am. Compl. ¶ 18)

Plaintiff alleges that in sending these letters, Defendant violated FDCPA, in that Defendant (a) used false, deceptive and misleading representations or means in connection with the collection of an alleged debt, (b) falsely represented the character, amount or legal status of an alleged debt, (c) used unfair or unconscionable means to collect or attempt to collect an alleged debt, and (d) failed to provide the consumer with a written notice containing the amount of the alleged debt.  (Am. Compl. ¶ 36)  Plaintiff further alleges that Conn. Gen. Stat. § 36a-806 prohibits collection agencies from engaging in any practice determined by the Commissioner of Banking to be an unfair or deceptive act or practice (Am. Compl. ¶ 43), and that the Commissioner of Banking has adopted regulations precluding false or misleading representations which are identical to the prohibitions set forth in FDCPA.  (Am. Compl. ¶ 44, citing Conn. Agencies Regs. § 36a-809-3(f-g)).

## II.     STANDARD OF REVIEW

When deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must "accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally." Rescuecom Corp. v. Google, Inc., 562 F.3d 123, 127 (2d Cir. 2009).  The Court's function in deciding a motion to dismiss "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Levitt v. Bear Stearns & Co., 340 F.3d 94, 101

(2d. Cir. 2003). "This issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks and citations omitted). "Nor does a complaint suffice if it tenders naked factual assertions devoid of further factual development." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. at 1950. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

When deciding a motion to dismiss, the Court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." Samuels v. Air Transp. Local 504, 992 F.2d 12, 15 (2d Cir. 1993). In the case at bar, Plaintiff has attached as exhibits to the Amended Complaint [Doc. 16] the two collection letters at issue [Doc. 39], although the Court has not relied on them in deciding this motion.

**III.   DISCUSSION**

CUTPA prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110b(a). To prevail on a claim under CUTPA, a plaintiff must demonstrate that he or she "suffered any ascertainable loss of money or property, real or personal" as a result of conduct prohibited by the Act. Conn. Gen. Stat. § 42-110g(a); see Hinchliffe v. Am. Motors Corp., 184 Conn. 607, 615 (1981) ("The ascertainable loss requirement is a threshold barrier

3

which limits the class of persons who may bring a CUTPA action seeking either actual damages or equitable relief."). Furthermore,

> [t]he "ascertainable loss" requirement does not require that a plaintiff prove a specific amount of actual damages. As the Connecticut Supreme Court has explained, "'ascertainable' means 'capable of being discovered, observed, or established,'" while "'loss' has been held synonymous with deprivation, detriment and injury. It is a generic and relative term." Hinchliffe, 184 Conn. at 613 (citations omitted). Thus, "whenever a consumer has received something other than what he bargained for, he has suffered a loss of money or property. That loss is ascertainable if it is measurable even though the precise amount of the loss is not known." Id. at 614. Moreover, "under CUTPA, there is no need to allege or prove the amount of the ascertainable loss." Id. CUTPA specifically permits equitable relief, and thus "expressly contemplates plaintiffs' judgments which do not include an award of money damages." Id. at 618.

Goins v. JBC & Assocs., P.C., 352 F. Supp. 2d 262, 274-275 (D. Conn. 2005).

In the case at bar, Defendant moves pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss Plaintiff's CUTPA claim on the basis that, despite amending the complaint, Plaintiff has failed to "include any allegations that would conceivably support a claim of ascertainable loss of money or property and therefore fails to meet a threshold statutory requirement under CUTPA." [Doc. 20 at 1]  In support of her claim that she has indeed pled an ascertainable loss, Plaintiff points to the allegations in the Amended Complaint that "Defendant reported Plaintiff's account as past due to the credit bureaus" (Am. Compl. ¶ 7) and that "Plaintiff did not bargain for illegal collection tactics." (Am. Compl. ¶ 8) Plaintiff also makes parallel allegations with regard to the putative class members. (Am. Compl. ¶¶ 48-49)

### A.   Benefit of the Bargain

Plaintiff asserts that she and putative class members have pled an ascertainable loss that can support a CUTPA claim, in that they have stated that they "did not bargain for illegal collection tactics." (Am. Compl. ¶¶ 8, 49) Plaintiff further argues that "inherent in every contract" is a "bargain for compliance with [relevant] statutes," such as the FDCPA, and that the implied bargain

was not honored here. [Doc. 21 at 2] It is true that "whenever a consumer has received something other than what he bargained for, he has suffered a loss of money or property." Hinchliffe, 184 Conn. at 614. However, as Defendant notes, Plaintiff's argument incorrectly assumes the existence of a contract between her and Defendant, when in fact the only entity with which Plaintiff bargained was Citibank, from whom Defendant, a debt collector, later purchased Plaintiff's defaulted consumer credit account. [Doc. 22 at 2-3] The Court has previously rejected this "benefit of the bargain" theory of ascertainable loss under CUTPA where, as here, the indebted plaintiff and the defendant debt collector were not in contractual privity, stating:

> Assuming that Plaintiff and his creditor entered into a valid consumer credit contract, and also assuming that an implied term of this contract was to collect the debt in accordance with the FDCPA, the reach of this contractual obligation was confined to the creditor and its successors in interest. The original creditor in this case was MBNA, and its successor in interest was CAMCO, which then hired Defendant to collect on Plaintiff's debt. As such, Defendant is not a party to the consumer credit contract, and therefore did not breach any contractual obligation to Plaintiff through its violation of the FDCPA.

Gervais v. Riddle & Assocs., P.C., 479 F. Supp. 2d 270, 280 (D. Conn. 2007). Furthermore, "courts in this district have consistently held that false communications from a debt collector alone, without further damage to a plaintiff, are insufficient to constitute ascertainable loss." Id. at 279 (citations omitted). Thus, Plaintiff and the putative class members have failed to allege an ascertainable loss for CUTPA purposes by stating that they did not bargain for illegal collection tactics.

      B.    **Reporting to Credit Bureaus**

Plaintiff also contends that she and the putative class members have pled an ascertainable loss by alleging that Defendant reported Plaintiff's and class members' accounts as past due to the credit bureaus. (Am. Compl. ¶ 7, 48) The only case that Plaintiff cites as having adopted this reasoning is a Utah state Court of Appeals decision interpreting the Utah Consumer Sales Practices Act ("UCSPA"), Utah Code Ann. §§ 13-11-1 to -23 (2005). While obviously not controlling with

5

respect to CUTPA, the rationale underpinning that decision is compelling:

> [G]iven the realities of our credit-dependent economy, we have no hesitation concluding that improperly causing negative information to be included in a personal credit report itself qualifies as the type of threshold "loss" section 13-11-19 requires a consumer to demonstrate as a result of a violation of the UCSPA. Certainly in this day and age, negative information in one's personal credit report can have a significant detrimental effect on one's credit rating, on one's ability to secure or maintain lines of credit at reasonable interest rates, and on one's sound fiscal reputation in general. It is clear that the negative information would not have been placed on Andreason's credit report but for the collection action Defendants instituted against him, which was based on a contract that had been fraudulently altered in contravention of the UCSPA.

Andreason v. Felsted, 137 P.3d 1, 6 (Utah Ct. App. 2006). In addition, the District Court for the District of Connecticut has previously indicated that a debt collection letter that violated FDCPA could potentially constitute an ascertainable loss, although it concluded that the Plaintiff had not demonstrated as much in that case:

> It is possible to speculate that a [collection] letter of the kind sent to plaintiff could cause injury in a variety of ways. A consumer may respond to the letter by actually paying an amount far greater than what is actually owed, or may incur other expenses in challenging the debt collection effort. *The debt collection practice may unfairly damage the consumer's credit rating*, or may cause the consumer emotional distress. The threshold of showing a measurable loss is not great.

Goins, 352 F. Supp. 2d at 275-276 (emphasis added).

In response, Defendant contends that "Plaintiff's allegation that Defendant reported Plaintiff's and class members' accounts as past due to the credit bureaus does not satisfy the ascertainable loss requirement because such allegations are not causally connected to the alleged violation." [Doc. 22 at 1-2] This argument was raised for the first time in reply, and consequently is not entitled to substantive consideration. Thomas v. Roach, 165 F.3d 137, 146 (2d Cir. 1999). Even if it were, it is deficient in merit for the following reasons.

As Defendant correctly notes, "in order to prevail in a CUTPA action, a plaintiff must establish both that the defendant has engaged in a prohibited act *and* that, 'as a result of' this act, the

plaintiff suffered an injury. The language 'as a result of' requires a showing that the prohibited act was the proximate cause of a harm to the plaintiff." Stevenson Lumber Company-Suffield, Inc. v. Chase Assocs., 284 Conn. 205, 214 (2007) (citation omitted, emphasis in original); see also Abrahams v. Young & Rubicam, 240 Conn. 300, 306 (1997).

Beyond offering those citations, Defendant has not further elaborated or explained its argument, leaving the Court to surmise its meaning, a task which the Court undertakes mindful of its responsibility to draw inferences in the light most favorable to Plaintiff.  Defendant appears to concede *arguendo* that reporting an account as past due to a credit bureau could constitute an ascertainable loss in some circumstances, while maintaining that it did not constitute such a loss in this case, because Defendant was not the proximate cause of Plaintiff's account being reported as past due.  Perhaps Defendant means to suggest that it did not in fact report Plaintiff's account as past due, and that Plaintiff's account was never reported by anyone as past due, or that it was only so reported by some other entity, such as Citibank.  Perhaps Defendant contends that Plaintiff's account would have been reported as past due to the credit bureau even if Defendant had not sent the collection letters that allegedly violated FDCPA, and thus the collection letters did not cause the harm alleged.

However, Plaintiff has claimed, among other things, that the letters violated FDCPA by falsely representing the amount of an alleged debt. (Am. Compl. ¶ 36)  To the extent that Defendant's report to the credit bureau reflected this inflated or otherwise false representation of the amount of Plaintiff's debt, it could have had a more significant negative impact on her credit rating than an accurately reported amount would have.  Therefore, it is plausible that Defendant's alleged FDCPA violations caused some ascertainable loss to Plaintiff with respect to her credit rating, even if Plaintiff's account might have been reported as past due in any case.  "The question to be asked in

7

ascertaining whether proximate cause exists is 'whether the harm which occurred was of the same general nature as the foreseeable risk' created by the defendant's act." Stevenson Lumber, 284 Conn. at 214 (citations omitted).

In alleging that Defendant reported Plaintiff's and putative class members' accounts as past due to the credit bureaus, Plaintiff and putative class members have pled an ascertainable loss sufficient to withstand a motion to dismiss the CUTPA claim. Whether Plaintiff and putative class members will ultimately be able to demonstrate that they suffered an ascertainable loss, or that Defendant was the proximate cause of that loss, are matters not currently before the Court.

**IV.   CONCLUSION**

For the reasons stated herein, Defendant's Motion to Dismiss [Doc. 19] is DENIED.

It is SO ORDERED.

Dated: New Haven, Connecticut

March 30, 2010

                                                     /s/ Charles S. Haight, Jr.
                                                    Charles S. Haight, Jr.
                                                    Senior United States District Judge