UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| KRISTA E. WISE, | |
|---|---|
| Plaintiff, | |
| v. | 3:09-cv-86 (CSH) |
| CAVALRY PORTFOLIO SERVICES, LLC, | |
| Defendant. | |

**RULING ON MOTION FOR CLASS CERTIFICATION**

HAIGHT, Senior District Judge:

Plaintiff Krista Wise brings this action individually and as a putative class action. Her Amended Complaint [Doc. 16] alleges violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. ("FDCPA") (Count One) and the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110 ("CUTPA") (Count Two).[1] Plaintiff alleges that Defendant Cavalry Portfolio Services, LLC ("Cavalry"), a debt collector, sent her two collection letters which violated the statutes. Plaintiff now moves pursuant to Federal Rule of Civil Procedure 23 to certify this action as a class action, with Plaintiff Krista Wise as class representative, and for appointment of Plaintiff's attorneys as class counsel. For the reasons stated herein, Plaintiff's Motion for Class Certification [Doc. 26] is GRANTED.

**I.   BACKGROUND**

Cavalry SPV I, LLC ("SPV") purchased Plaintiff's defaulted Citibank account in March 2008. Thereafter, Defendant Cavalry Portfolio Services, LLC engaged in collection efforts on behalf of SPV.

---

[1] The initial Complaint [Doc. 1] also included a claim pursuant to the Connecticut Creditors Collection Practices Act ("CCPA"), which was dropped from the Amended Complaint [Doc. 16].

On March 11, 2008, Defendant sent Plaintiff a collection letter, which listed a balance of $7,178.43. On November 12, 2008, Defendant sent Plaintiff a second collection letter, which listed the balance due as $7,988.99. "None of the letters stated that the amount of the debt might vary from day to day because of, for example, interest, late charges, or other charges." (Am. Compl. ¶ 17) "None of the letters notified Plaintiff of her right to obtain an exact, up-to-date amount of the debt allegedly due." (Am. Compl. ¶ 18)

Plaintiff alleges that in sending these letters, Defendant violated FDCPA, in that Defendant (a) used false, deceptive and misleading representations or means in connection with the collection of an alleged debt, (b) falsely represented the character, amount or legal status of an alleged debt, (c) used unfair or unconscionable means to collect or attempt to collect an alleged debt, and (d) failed to provide the consumer with a written notice containing the amount of the alleged debt. (Am. Compl. ¶ 36) Plaintiff further alleges that Conn. Gen. Stat. § 36a-806 prohibits collection agencies from engaging in any practice determined by the Commissioner of Banking to be an unfair or deceptive act or practice (Am. Compl. ¶ 43), and that the Commissioner of Banking has adopted regulations precluding false or misleading representations which are identical to the prohibitions set forth in FDCPA. (Am. Compl. ¶ 44, citing Conn. Agencies Regs. § 36a-809-3(f-g)).

> Plaintiff seeks certification of the following classes:
>
> FDCPA Class: All persons in the State of Connecticut to whom, since one year prior to the filing of this Complaint, Cavalry sent one or more Letters or other communications substantially in the form of one of the Letters attached to the Complaint in an attempt to collect a non-business debt, which letters were not returned as undeliverable by the Postal Service.
>
> CUTPA Class: All persons in the State of Connecticut to whom, since three years prior to the filing of this Complaint, Cavalry sent one or more Letters or other communications substantially in the form of one of the Letters attached to the Complaint in an attempt to collect a non-business debt, which letters were not returned as undeliverable by the Postal Service.

[Doc. 26 at ¶¶ A&B] Defendant raises various objections to these class definitions, some on the basis of their purported lack of clarity. While maintaining that the definitions are adequate, and noting that pursuant to Fed. R. Civ. P. 23(c)(1)(B), it is the Court and not the Plaintiff that ultimately defines the class, Plaintiff nonetheless offers the following revised proposed class definitions:

> FDCPA Class: All persons with Connecticut addresses at the time to whom Cavalry sent, since the period that is one year prior to the filing of the Complaint, one or more letters or other communications in an attempt to collect a debt that was incurred for personal, family, or household purposes and which was subject to being increased by reason of interest, late charges, or other charges, and Cavalry failed in the initial letter to notify them that the debt might vary from day to day or failed to notify them that they could contact Cavalry to obtain an up-to-date amount of the debt allegedly due.

> CUTPA Class: All persons with Connecticut addresses at the time to whom Cavalry sent, since the period that is three years prior to the filing of the Complaint, one or more letters or other communications in an attempt to collect a debt that was incurred for personal, family, or household purposes and which was subject to being increased by reason of interest, late charges, or other charges, and Cavalry failed in the initial letter to notify them that the debt might vary from day to day or failed to notify them that they could contact Cavalry to obtain an up-to-date amount of the debt allegedly due.

[Doc. 30 at 4] Defendant sought and was granted leave to file a sur-reply to address these proposed revised class definitions. Defendant filed a sur-reply, which has been considered by the Court. [Doc. 32, Ex. A] As the moving party, Plaintiff was afforded an opportunity to further respond, but it did not do so. [Doc. 33] The proposed revised class definitions shall be treated as the operative definitions for purposes of deciding this motion. Where the proposed revised class definitions squarely address and clarify points to which Defendant had objected as being unclear, those objections are not necessarily discussed herein, to the extent the Court considers them to have been unquestionably resolved by the revised definitions that were proffered by Plaintiff. To the extent that any definitional issues arguably remain, they are discussed *infra* as they relate to the various requirements for class certification under Rule 23.

## II. STANDARD OF REVIEW

Under Rule 23(a) of the Federal Rules of Civil Procedure, a member of a class may sue or be sued as a representative of all members of a class only if all of the following conditions are met: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). These requirements are typically summarized as requirements of numerosity, commonality, typicality, and adequacy of representation. *See, e.g., Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir.2002).

Furthermore, under Rule 23(b), at least one of three additional conditions must be fulfilled. Plaintiff seeks class certification pursuant to Rule 23(b)(3), which provides that the class may be certified if:

> the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

## III. DISCUSSION

### A. Rule 23(a) Analysis

#### 1. Numerosity

In order for a class to be certified, it is necessary that "the class is so numerous that joinder of

all members is impracticable." Fed. R. Civ. P. 23(a)(1). Plaintiff's Amended Complaint alleges that Defendant Cavalry sent out "hundreds if not thousands" of standard form letters that were "virtually identical" to those sent to Plaintiff Krista Wise. (Am. Compl. ¶ 25) Plaintiff's motion for class certification states, without citation to the Amended Complaint, "Plaintiff has alleged that there are at least 40 class members per year." [Doc. 26 at 5] However, the Court can locate no such allegation in the Amended Complaint. Plaintiff does state in her motion for class certification that "Cavalry's responses to Requests for Admissions Nos. 27 & 28 admit this figure." [Doc. 26 at 6] Indeed, Cavalry's June 25, 2009 Response to Plaintiff's Request for Admissions bears this out.[2] [Doc. 31, Ex. A] Plaintiff's request for admissions states:

> There are at least forty persons in the State of Connecticut to whom, during the three years prior to the filing of this Complaint, Defendant sent one or more Letters or other communications substantially in the form of one of the Letters in an attempt to collect non-business debt, which letters were not returned as undeliverable by the Postal Service.

[Doc. 31 at ¶ 26] The reference to three years is derived from the statute of limitations for CUTPA claims. The following paragraph poses the same request but limits the time period to one year prior to the filing of the complaint, in light of the shorter limitations period for FDCPA claims. [Doc. 31 at ¶ 27] To both requests for admissions, Defendant responded:

> Defendant objects to this request for admission on the grounds that it is unduly vague and irrelevant to the claims and defenses in this action. Without waiving these objections, Defendant admits the statement.

[Doc. 31 at ¶¶ 26 & 27]

Thus, Defendant has conceded that there are at least 40 members of each of the putative classes. The Second Circuit has stated, "A leading treatise concludes, based on prevailing precedent, that the

---

[2] That is, except for the fact that the paragraphs that Plaintiff means to cite are 26 and 27, not 27 and 28.

difficulty in joining as few as 40 class members should raise a presumption that joinder is impracticable." *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993) (citing 1 Herbert B. Newberg, *Newberg on Class Actions: A Manual for Group Litigation at Federal and State Levels* § 3.05, at 141-42 (2d ed. 1985)). Furthermore, "[c]ourts have not required evidence of exact class size or identity of class members to satisfy the numerosity requirement." *Id*. at 935.

Nonetheless, Defendant argues that Plaintiff has failed "to supply the Court with even a rough estimate of the size of the proposed class." [Doc. 29 at 7] Defendant continues, "Although Plaintiff inquired about the size of the putative class in discovery, Defendant was unable to determine the size due to the ambiguities and definitional problems discussed above and therefore objected. As a result, Plaintiff has failed to present a record sufficient to establish numerosity." [Doc. 29 at 8] The unreasonableness of this position is readily apparent. Defendant is not free to decline to provide to Plaintiff information which she requested, and to which only it has access, and then to argue that her motion for class certification must be denied absent that information. If, notwithstanding any definitional ambiguities, Defendant could identify potential class members well enough to know that there were at least forty of them, then presumably it could have provided Plaintiff and the Court at least a rough estimate of the likely class size.

In addition, Defendant makes inconsistent arguments with respect to the potential class size. In arguing that Plaintiff has failed to establish numerosity, Defendant maintains that Plaintiff has not presented "a reasonable basis for an inference that the class . . . is sufficiently numerous that joinder is impracticable." [Doc. 29 at 7] However, in arguing on sur-reply that Plaintiff has failed to demonstrate that her attorneys can finance this action, Defendant points to a statement by Plaintiff's attorney that his firm has handled class actions of more than 20,000 class members. Defendant then questions whether Plaintiff's counsel "could finance a class action that is substantially larger than 20,000 members" [Doc.

32 at 3], implying that this may be such an action. The class cannot simultaneously be both too small to establish numerosity and too large to be manageable.

While the fact that membership in the class derives from being a sent a standard form debt collection letter suggests that the class may in fact be significantly larger, the Court concludes that the admitted class size of at least forty members is sufficient to establish numerosity.

### 2. Commonality and Typicality

A second and third requirements for class certification are that "there are questions of law or fact common to the class," Fed. R. Civ. P. 23(a)(2), and that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). While these are distinct requirements, based on their focus on "questions of law or fact" versus "the claims or defenses" at issue, Defendant raises a unified objection to Plaintiff's claim to have satisfied both these requirements, specifically that "it is unclear whether Plaintiff's claims are predicated on the receipt of merely one letter or require two letters, or whether there is a violation connected with sending only the first such letter or only the second." [Doc. 29 at 8] Assuming without deciding that it is a violation of the FDCPA and/or CUTPA to send a debt collection letter that fails to inform the recipient that the debt might vary from day to day due to interest or late charges or that the recipient may contact the sender to obtain an up-to-date amount of the debt allegedly due, then the violation occurs when the first such letter is sent. The FDCPA is a strict liability statute. *Lemire v. Wolpoff & Abramson, LLP*, 256 F.R.D. 321, 326 (D. Conn. 2009) (citing *Macarz v. Transworld Sys., Inc.*, 193 F.R.D. 46, 51 (D. Conn. 2000)). While Plaintiff Krista Wise subsequently received another letter with a larger balance due, it is not necessary under Plaintiff's theory of the case that she or any other class member receive a second letter in order for a FDCPA violation to have occurred. Given that the sole issue is whether the language of Defendant's standard form debt collection letter complied with the law, the fact that class members may

7

have received one, two, or three or more such letters does not serve to defeat commonality or typicality.

### 3. Fair and Adequate Representation

It is also necessary for class certification that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Defendant maintains that Plaintiff Krista Wise is not an adequate class representative, and that her attorneys, Daniel S. Blinn and Joanne S. Faulkner, are not adequate class counsel. Defendant's primary objection appears to be that Plaintiff has "failed to demonstrate that either she or her attorneys are in a position to finance this class action." [Doc. 32 at 2] However, the affidavit of Daniel Blinn states, "My firm has sufficient resources to handle this case; we have handled class actions having more than 20,000 class members and can readily handle a case such [as] this," noting that he has "served as lead counsel in approximately thirty certified consumer class action lawsuits. Four of these cases were suits brought in the federal court under the [FDCPA]." (Blinn Affid. ¶¶ 8, 10) [Doc. 26-3]. The affidavit of Joanne Faulkner describes her experience with class actions and in consumer law matters. (Faulker Affid., ¶¶ 4-7) [Doc. 26-3] The Court believes that counsel are sufficiently experienced and competent to adequately represent the class, and sees no reason to doubt their representation that they can finance the costs of this class action.

Defendant also objects to Krista Wise serving as class representative, arguing that she has not demonstrated her "familiarity with the action, her participation in decision-making in the case . . . [or] her understanding of the comparative merits of class and individual actions." [Doc. 29 at 10] However, Ms. Wise has submitted an affidavit stating, "I have been actively involved in this litigation from the time it commenced, including the decision to bring the case as a class action, and I have remained in contact with my attorneys about the status of the case since the time that I authorized the suit." (Wise Affid. ¶ 6) [Doc. 26-2] More centrally to the inquiry regarding her fitness to serve as a class representative that will "fairly and adequately protect the interests of the class," Fed. R. Civ. P. 23(a)(4),

Ms. Wise has also averred that "I have no known interest that would be adverse to those of the class members." (Wise Affid. ¶ 2) Notwithstanding having deposed Ms. Wise [*See* Doc. 30 at 6], Defendant provides no specific information about why Ms. Wise would not be an suitable representative of the interests of the class. Upon consideration of all the submissions, the Court appoints Krista Wise as class representative.

### B.     Rule 23(b)(3) Analysis

Having concluded that the four prerequisites of Rule 23(a) are satisfied, the Court must now establish that "the putative class falls within any one of the three categories of Rule 23(b)." *Duprey v. Dep't of Motor Vehicles*, 191 F.R.D. 329, 338 (D. Conn. 2000). Plaintiff seeks class certification pursuant to Rule 23(b)(3), which states that the class may be certified if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

#### 1.     Predominance of Common Questions

The FDCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes." 15 U.S.C. § 1692a. Defendant argues that common questions do not predominate because "any determination of liability or class membership will turn on facts and circumstances applicable to each class member," requiring Defendant to conduct "an individualized inquiry into each and every class member's debt to determine whether the debt is a consumer debt, in which case the FDCPA would apply," or a business debt, in which case it would not. [Doc. 29 at 11] Defendant claims that "[w]hile such an inquiry sounds simple, it is actually very difficult because the nature of an underlying debt cannot be determined ministerially

from any readily available set of records." *Id*.

Defendant's argument has been previously considered and squarely rejected by this Court:

> Should a debt collection company as large and as sophisticated as [Defendant] be able to avoid class action liability by mere fact of inadequate record-keeping, the Congressional purpose behind the statute would indeed be thwarted. . . . [D]efendant's claim that their records are not up to the task of differentiating the debts it collects rings hollow. In addition, any disputes regarding whether a particular class member's debt is consumer or commercial can be remedied through proper drafting of the claim form, and at the damages phase of this case.

*Macarz v. Transworld Sys.*, 193 F.R.D. 46, 57 (D. Conn. 2000). Citing Defendant's website,[3] Plaintiff asserts that making this distinction on the claim form, while possible, will be unnecessary, because in fact Defendant Cavalry purchases only consumer debt and does not purchase business debt. [Doc. 30 at 7-8] That is an issue for another day. The Court concludes that questions of law or fact common to class members predominate over any questions affecting only individual members.

### 2. Superiority of a Class Action

Rule 23(b)(3) provides that, in deciding whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy," the Court should consider "the class members' interests in individually controlling the prosecution or defense of separate actions." Defendant contends that a class action is inferior in this case because "[e]ach class member of Plaintiff's proposed class potentially has a higher interest in controlling his or her own case because of the class action limit on statutory damages." [Doc. 29 at 12] Specifically, with respect to damages, the FDCPA provides:

> Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of --

---

[3] *See* http://cavalryinvestments.com/cav/faqs.html. Plaintiff filed a print out of the web page as of October 12, 2009 as an attachment to Daniel Blinn's affidavit in conjunction with his reply brief. [Doc. 31, Ex. B] However, as of September 14, 2010, the web page had been completely redesigned.

>   (1) any actual damage sustained by such person as a result of such failure;
>   (2) (A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $ 1,000; or
>   (B) in the case of a class action, (i) such amount for each named plaintiff as could be recovered under subparagraph (A), and (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $ 500,000 or 1 per centum of the net worth of the debt collector; . . . .

15 U.S.C. § 1692k(a). Thus, Defendant contends that potential class members stand to recover more in individual actions than in a class action, rendering the class action an inferior action from the perspective of potential class members.

This Court has previously rejected precisely these arguments. As Judge Arterton explained:

> First, under Rule 23(c)(2)(A), members of class actions maintained under 23(b)(3) who determine that their interests are better served by an individual action, and provide timely notice of this election to the Court, will be excluded from the class. This "opt out" provision is designed to ensure that even in a class action that meets all the prerequisites of Rule 23, "the individual interest is respected."
> Further, the notion that individual plaintiffs may recover higher damages if they were to pursue their own claims is implicit in the very idea of a class action, and is part of the balance that is struck in Rule 23 of providing a vehicle for the aggregation of small claims while still seeking to protect those individual claimants. The possibility that putative class members would be entitled to greater recovery should they pursue claims on their own arises in every class action, but it not grounds for denying class certification, if the other criteria are met.

*Macarz*, 193 F.R.D. at 55 (citations omitted).

The fact that Plaintiff has been unable to provide an estimate of the potential recovery by each class member, because Defendant has not provided information regarding approximately how many class members exist, does not preclude a showing of the superiority of a class action. Indeed, this Court certified a FDCPA class action even where a defendant contended that it had a negative net worth and that, as a result, "there will be no recovery for the class members, even if liability is established." *Lemire*, 256 F.R.D. at 331, n. 12. While noting that "I am not convinced that the auditor's statement is

the final word on the net worth of [Defendant]," the Court nonetheless concluded, "[E]ven if [Defendant's] net worth turns out to be negative, a class action will *still* be superior to individual litigation." *Id.* at 331 (emphasis in original).

The reality is that no more than a few potential class members, at most, are likely to bring individual actions. Were it otherwise, Defendant would certainly jump at the opportunity to limit its potential liability through class certification. The function of the class action is to encourage the enforcement of federal statutes such as the FDCPA by enabling collective lawsuits that potential class members would be relatively unlikely to bring individually, either because the potential recovery even in an individual action is relatively small, because they are unaware of their rights or that a violation may have occurred, or because they lack the time, energy, or resources to pursue litigation individually. Furthermore, challenging the content of a standard form letter is the type of suit that is more efficiently brought as a class action than as a series of individual actions, with the inefficiency and risk of inconsistent outcomes posed by that method. Finally, the interests of individual litigants in a potentially larger recovery are preserved by the opt-out procedures that will be observed. Therefore, I conclude that a class action is superior in this case.

### 3. Other Considerations

In making the predominance and superiority analyses, Federal Rule of Civil Procedure 23(b)(3), quoted in full *supra*, directs the Court to several "matters pertinent to these findings," including the interest that individual litigants would have in controlling their separate actions, the extent of any already-existing, related litigation, the desirability of concentrating claims in this particular forum, and the likely difficulties in managing a class action. The parties have not briefed any arguments surrounding those factors beyond what has already been discussed, and based upon their papers, I find that these conditions are met. The interest of litigants in controlling separate actions is preserved by the

opt-out procedures; there is no evidence of any related existing litigation; this forum is ideal since one of Plaintiff's claims is based on Connecticut state law; and no particular difficulty in managing the class action has been identified beyond Defendant's vague concern that it will be too large for Plaintiff's counsel to finance and handle, notwithstanding Defendant's apparently contradictory assertion that the proposed class also fails the numerosity test.

## IV. CONCLUSION

For the reasons stated herein, Plaintiff's Motion for Class Certification [Doc. 26] is GRANTED. Krista E. Wise is appointed as class representative. Pursuant to Fed. R. Civ. P. 23(c)(1)(B) and 23(g), the Court hereby appoints Daniel S. Blinn and Joanne S. Faulkner as class counsel. The certified classes are as follows:

> FDCPA Class: All persons with Connecticut addresses at the time to whom Cavalry sent, since the period that is one year prior to the filing of the Complaint, one or more letters or other communications in an attempt to collect a debt that was incurred for personal, family, or household purposes and which was subject to being increased by reason of interest, late charges, or other charges, and Cavalry failed in the initial letter to notify them that the debt might vary from day to day or failed to notify them that they could contact Cavalry to obtain an up-to-date amount of the debt allegedly due.

> CUTPA Class: All persons with Connecticut addresses at the time to whom Cavalry sent, since the period that is three years prior to the filing of the Complaint, one or more letters or other communications in an attempt to collect a debt that was incurred for personal, family, or household purposes and which was subject to being increased by reason of interest, late charges, or other charges, and Cavalry failed in the initial letter to notify them that the debt might vary from day to day or failed to notify them that they could contact Cavalry to obtain an up-to-date amount of the debt allegedly due.

The parties are ordered to confer and to jointly file with the Court a proposed schedule for this case going forward, which shall be due within fourteen days of this Ruling.

It is SO ORDERED. Dated at New Haven, Connecticut, September 15, 2010

*/s/ Charles S. Haight, Jr.*
Charles S. Haight, Jr.
Senior United States District Judge